**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re: Smith & Nephew | * | MDL No. 2775 |
| Birmingham Hip Resurfacing | * | Master Docket No. 1:17-md-2775 |
| (BHR) Hip Implant Products | * | |
| Liability Litigation | * | Judge Catherine C. Blake |
| | * | |
| | * | THIS DOCUMENT RELATES |
| | * | TO ALL ACTIONS |

**MEMORANDUM**

Now pending is Smith & Nephew's motion for an amended order governing *ex parte* contacts with surgeons and treating physicians. (ECF 2066). For the reasons stated below, the motion will be granted in part, as to the request that plaintiffs' counsel notify the treating physicians that Smith & Nephew is not permitted to meet with them prior to the deposition, and otherwise will be denied.

**FACTS/PROCEDURAL HISTORY**

Smith & Nephew previously filed a motion in May 2018 requesting that the court issue a protective order regarding *ex parte* contacts with the plaintiffs' treating physicians. In its June 20, 2018, order, the court declined to limit the plaintiffs' counsel's *ex parte* contacts with the physicians to non-liability issues, but ordered that the plaintiffs disclose to Smith & Nephew the date, duration, participants, and documents provided in any *ex parte* contact with a treating physician. (ECF 798; ECF 801 (Amended Order)). The court also imposed restrictions on Smith & Nephew's *ex parte* contacts with treating physicians for the purposes of retaining them as expert witnesses.

Smith & Nephew now moves for an amended order based on information it has learned about the plaintiffs' *ex parte* conversations with the first three treating physicians (Dr. Jack Wayne Bowling, Dr. Henry R. Boucher, and Dr. David Martin) to be deposed. It argues that,

1

according to the plaintiffs' disclosures and testimony during depositions, plaintiffs' counsel spent the large majority of their *ex parte* conversations with these physicians on topics relating to liability (specifically, on whether the physician's treatment would have been different if he knew of information that Smith & Nephew allegedly withheld), instead of topics relating to the treatment of the individual plaintiff. Smith & Nephew argues that this biases or is intended to bias the physicians against Smith & Nephew, and is especially problematic when the plaintiffs question the physicians first in depositions, as many hours of questioning pass before Smith & Nephew can present the other side of the story.[1] Smith & Nephew requests that the court 1) limit the scope of the *ex parte* conversations to "reviewing the Plaintiff's own medical records and discussing the doctor's care and treatment of the Plaintiff"; 2) alternatively, allow Smith & Nephew to meet *ex parte* with the physicians to discuss liability issues, or at least to question treating physicians first at depositions; and 3) require plaintiffs' counsel to notify each physician it meets with *ex parte* that Smith & Nephew is precluded from meeting with them or showing them documents prior to the deposition.

The plaintiffs respond that they have not acted inappropriately. They point out that nothing prohibits them from asking questions regarding information Smith & Nephew allegedly withheld from the physicians, and that this is relevant to specific causation.

## DISCUSSION

Federal Rule of Civil Procedure 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v.*

---

[1] To the extent they have not, the court reiterates that the parties must comply with the protective order (ECF 88) when supplying confidential documents to the treating physicians.

*Rhinehart*, 467 U.S. 20, 36 (1984); *see also Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 172–73, 178 (4th Cir. 2014) (a district court has "considerable discretion in overseeing discovery").

Smith & Nephew has not provided sufficient justification for the court to issue an amended order. Smith & Nephew states that the plaintiffs' counsel, in *ex parte* contacts, showed documents to the three treating physicians that the plaintiffs contend Smith & Nephew withheld; asked the doctors if these documents would have affected their treatment decisions; and asked similar questions during the *ex parte* conversations as were later asked during depositions. But Smith & Nephew presents no evidence that these three physicians were actually biased against Smith & Nephew, or that the plaintiffs' counsel coached or influenced their testimony. *See In re: Benicar (Olmesartan) Prod. Liab. Litig.,* No. 15-2606 (RBK/JS), 2016 WL 1370998, at *3 (D.N.J. Apr. 6, 2016) (defendants did not show good cause for protective order when they presented no credible evidence that the plaintiffs' counsel would improperly influence treating physicians in *ex parte* contacts).

In fact, deposition testimony indicates that, contrary to Smith & Nephew's concern, the treating physicians were not biased or swayed by the *ex parte* conversations. Dr. Bowling testified that he understood that the documents showed to him by plaintiffs' counsel *ex parte* were helpful to the plaintiffs' case, and would not be surprised that Smith & Nephew would have shown documents helpful to its case, as there are two sides to every story. (ECF 2066-4 at 11–12, Jack Bowling Depo. at 165:25–166:13). And Dr. Boucher testified that, although he would consider company emails when making treatment decisions, he would consider all sources of information and "certainly wouldn't rely on just one." (ECF 2070-7 at 11, Henry Boucher Depo. at 35:5–24).

The court understands Smith & Nephew's concern that it is unfairly prejudiced by plaintiffs' counsel's *ex parte* contacts with treating physicians. *See In re Chantix (Varenicline) Prod. Liab. Litig.*, No. 2:09-CV-2039-IPJ, 2011 WL 9995561, at *3 (N.D. Ala. June 30, 2011). The court, however, believes that the current procedures (the plaintiffs' disclosures, as well as the ability of Smith & Nephew to ask about the *ex parte* conversations during depositions) properly balances, on one hand, the possible unfairness to Smith & Nephew and, on the other, the physician-patient relationship, a party's general ability to get informal discovery from fact witnesses, and the difficulty of policing *ex parte* conversations with treating physicians. *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 167 F. Supp. 3d 936, 937–38 (N.D. Ill. 2016) (there are typically no restrictions on a party's access to fact witness, and "even though some states restrict defense-to-physician communications, the Court is unaware of . . . any such state that . . . impos[es] [] a parallel prohibition (or some other form of restriction) on the plaintiff's attorney"); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2016 WL 915288, at *5–6 (E.D. La. Mar. 9, 2016) ("Defendants' request to cleanse advocacy from Plaintiffs' *ex parte* physician contacts may not be easily detectable and is not enforceable," and noting that cross-examination can help to mitigate the defendants' concerns).

Smith & Nephew argues that two U.S. district courts have granted similar motions, citing to *D.M. v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KGG, 2018 WL 6696561 (D. Kan. Dec. 20, 2018) and *In re Zimmer M/L*, No. 18-md-2859, 2019 WL 6998493 (S.D.N.Y. Dec. 19, 2019). Both of these cases regard defense counsel's *ex parte* contacts with the plaintiffs' treating physicians, and appear to be relevant to Smith & Nephew's request that, in the alternative, it be allowed *ex parte* contacts with treating physicians regarding liability issues. *D.M.*, however, was not an MDL and allowed such contacts based on that district's "well-established practice of

4

issuing an order allowing [defense counsel to engage in] *ex parte* communications with treating physicians," *D.M.*, 2018 WL 6696561, at *4.  In contrast, there appears to be no such "well-established practice" among federal courts generally.  And *In re Zimmer* held that courts must apply state *ex parte* rules under Federal Rules of Evidence 501.  *In re Zimmer,* 2019 WL 6998493, at *1.  But while there is some disagreement in federal courts as to what law governs defense counsel's *ex parte* conversations with treating physicians, both parties seem to agree that the court should apply federal procedural law here, as "federal procedural law [] governs discovery practice."  *In re Zimmer NexGen Knee Implant Prod. Liab. Litig.*, 890 F. Supp. 2d 896, 902 (N.D. Ill. 2012).[2]  To the extent that Smith & Nephew seeks to have *ex parte* conversations with treating physicians to discuss liability issues, this would place "an undue burden on the physician-patient relationship," *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.,* 2016 WL 915288, at *6, and Smith & Nephew can question the treating physicians on liability issues during their depositions.

The court also will deny Smith & Nephew's request to question all treating physicians first at depositions.  As stated above, Smith & Nephew has not provided sufficient evidence of bias in order to change the current discovery procedures.  *See In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 167 F. Supp. 3d at 940 (rejecting request to allow the defendant to examine each treating physician first because "disclosure of plaintiffs' counsel's pre-deposition contacts, combined with the opportunity to cross-examine, is sufficient to allow appropriate determination of the weight to be given to a physician's testimony.").

Finally, the court will grant Smith & Nephew's request to require plaintiffs' counsel to notify each physician it contacts *ex parte* that Smith & Nephew is precluded from meeting with

---

[2] Neither party argues that whether Smith & Nephew can engage in *ex parte* conversations with treating physicians is governed by the underlying state privilege law in each case.

them or showing them any documents prior to the deposition.  It does not appear that the plaintiffs contest this, and the court finds it is a reasonable measure.  The plaintiffs' counsel should provide each treating physician a letter, to be agreed on by the parties, that explains that defense counsel are not permitted to meet with the physician prior to the deposition, but will participate in the deposition and may have different documents to share.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part Smith & Nephew's motion for an amended order governing *ex parte* contacts.  A separate order follows.

4/27/20
Date

/S/
Catherine C. Blake
United States District Judge