IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: Smith & Nephew | * | MDL No. 2775 |
| Birmingham Hip Resurfacing | * | Master Docket No. 1:17-md-2775 |
| (BHR) Hip Implant Products | * | |
| Liability Litigation | * | Judge Catherine C. Blake |
| | * | |
| | * | THIS DOCUMENT RELATES |
| | * | TO ALL ACTIONS |

**MEMORANDUM**

The plaintiffs move to compel the production of certain documents created for or by Smith & Nephew's Metal-on-Metal leadership team ("MoM leadership team"). (ECF 2043). These documents were inadvertently produced by Smith & Nephew and clawed back on the grounds that they were protected by attorney-client privilege or the work product doctrine.[1] The motion has been fully briefed and oral argument was heard. For the reasons stated below, it will be denied.

**BACKGROUND**

The MoM leadership team was created in early 2013 at the instruction of George Stacey, then Chief Legal Counsel for Advanced Surgical Devices and Emerging Markets at Smith & Nephew. (ECF 2057-1, Decl. of Jean Mercer ¶ 6).[2] The team included in-house legal counsel. (Decl. of Mercer ¶ 6; ECF 2057-2, Decl. of Andreas Weymann ¶ 6). The principal purpose of the MoM leadership team was to provide legal advice to Smith & Nephew regarding metal-on-metal devices, given the pending litigation against Smith & Nephew and other companies. (Decl. of Mercer ¶ 7; Decl. of Weymann ¶ 5). The MoM leadership team and their reports conducted

---

[1] The plaintiffs also request that the court order Smith & Nephew to produce the documents for *in camera* review. Smith & Nephew submitted three groups of documents in order to simplify the court's review (drafts of a presentation to the MoM leadership team, meeting documents, and copies of a report to the MoM leadership team containing legal analysis), but did not submit all the clawed back documents. The plaintiffs have not objected to the submission of some of the documents, and it appears that the motion to compel concerns mainly one document, a PowerPoint presentation for the MoM leadership team, that was produced to the court. Therefore, to the extent the plaintiffs request *in camera* review, that request is denied as moot. Instead, the court treats the motion as a motion to compel production.

[2] The court has previously ruled on a discovery dispute between the parties that involved similar claims of privilege. (ECF 1582).

investigations to supply Smith & Nephew lawyers with the information to provide legal advice. (Decl. of Mercer ¶ 8; Decl. of Weymann ¶ 7).

The plaintiffs mainly focus on a draft of a PowerPoint presentation prepared for the MoM leadership team. The court requested additional information about this draft presentation, several versions of which were clawed back, and received an *ex parte* declaration from Tim Bland, a member of the MoM leadership team. In the declaration, Bland states that he was tasked with creating a presentation for the lawyers on the leadership team for the purposes of obtaining legal advice, and worked with a subordinate to prepare the presentation. Smith & Nephew also clawed back other MoM leadership team documents, including compilations of documents considered by the MoM leadership team, MoM leadership team meeting minutes, and "a report to the MoM Leadership Team that reflects analysis prepared by outside legal counsel." (Opp'n at 7 n.2).

## DISCUSSION

"The attorney-client privilege empowers a client — as the privilege holder — 'to refuse to disclose and to prevent any other person from disclosing confidential communications between him and his attorney.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173 (4th Cir. 2019), as amended (Oct. 31, 2019) (citing Black's Law Dictionary 129 (6th ed. 1990)). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). But the "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395. The proponent of the privilege has the burden to demonstrate it applies. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338–39 (4th Cir. 2005).

2

"The work-product privilege protects from discovery an attorney's work done in preparation for litigation." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks and citation omitted). Fact work product may still be obtained upon a "showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.* (citation omitted). Opinion work product represents the thoughts and impressions of the attorney and may only be discovered "in very rare and extraordinary circumstances." *Id.*

The documents at issue are protected by attorney-client privilege. The MoM leadership team was created in order to provide legal advice regarding metal-on-metal litigation, including pending litigation against Smith & Nephew. (Decl. of Mercer ¶ 7). The attorney-client privilege protects the giving of information to a lawyer for the purpose of obtaining legal advice. The draft PowerPoint presentations represent the giving of information to the MoM leadership team (which included lawyers) for the purpose of obtaining legal advice, and therefore are privileged communications. The privilege also covers other information and documents given to the MoM team for the purpose of obtaining legal advice, as well as documents such as MoM leadership team meeting minutes that reflect such communications. Finally, some of the documents at issue contain legal advice to Smith & Nephew prepared by outside counsel, which would also be protected.

The documents are also protected by the work-product doctrine. The MoM leadership team was created at the instruction of Chief Legal Counsel George Stacey, and MoM leadership team members and their reports performed work at the direction of Smith & Nephew lawyers on the leadership team. (Decl. of Mercer, ¶¶ 6, 8). Therefore, the draft presentations, meeting minutes, compilation of documents, and other reports to the team appear to be work product created by or for lawyers in anticipation of litigation.

The plaintiffs make several arguments as to why the documents are not privileged. First, they argue that the documents regard business decisions, not legal advice. Although the documents may reflect "performance of the devices, commercial strategy, [and] education," (Mot. at 3), as noted above, attorney-client privilege also protects non-legal information given to attorneys. Here, non-legal information provided to the MoM leadership team for the purpose of obtaining legal advice is still protected.

The plaintiffs also argue that the documents are not privileged because they were not prepared by attorneys. But attorney-client privilege also protects communications "made by and to non-attorneys serving as agents of attorneys in internal investigations." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014). Similarly, the work product doctrine protects work product completed by and for attorneys. *See Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 387 n.39 (D. Md. 2005). It appears that non-attorney members of the MoM leadership team and their direct reports collected information and presented it to the MoM leadership team as agents of the attorneys and at the direction of the attorneys.

Third, the plaintiffs argue that some documents were prepared between 2013 and early 2014, before Smith & Nephew claimed to have learned of the defects in BHR products. But at the time the MoM leadership team was created in 2013, there was already pending litigation against Smith & Nephew. (Decl. of Mercer ¶ 7). Further, additional litigation appears to have been anticipated.[3] Therefore, the documents appear to have been prepared in preparation for litigation.

Finally, the plaintiffs argue that the overriding interests lean towards production. But Smith & Nephew has demonstrated that attorney-client privilege applies, which "affords all communications between attorney and client absolute and complete protection from disclosure." *In*

---

[3] In a previous memorandum on a similar discovery dispute, the court noted that "in 2012, litigation was both pending and anticipated against Smith & Nephew related to its [MoM] hip replacement devices." (ECF 1582, Memorandum at 1).

*re Allen*, 106 F.3d 582, 600 (4th Cir. 1997).  And even under the work product doctrine, the plaintiffs have not shown substantial need and undue hardship (for fact work product) or "rare and extraordinary circumstances" (for opinion work product).  The plaintiffs can still discover the underlying facts of the communications, even if they cannot discover the communications themselves.  For example, even if the compilation of documents prepared for the MoM leadership team is protected, Smith & Nephew stated at oral argument that it would not invoke privilege based on the work of the MoM leadership team as to individual preexisting independently prepared documents, (*see* ECF 2080, Oral Argument Transcript at 18:10–22:10), that are otherwise responsive to the plaintiffs' discovery requests.  And an *ex parte* declaration from attorney Sarah Segrest-Jay submitted to the court confirms that information within several slides of the PowerPoint presentation (which were identified by the court at oral argument) has already been produced to the plaintiffs.[4]

## CONCLUSION

For the reasons stated above, the plaintiffs' motion (ECF 2043) is denied.  A separate order follows.

| | |
|---|---|
| 6/10/20 | /S/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[4] The plaintiffs do not contend that the inadvertent disclosure constitutes a waiver of privilege, and the court does not address that.