**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re: Smith & Nephew | * | MDL No. 2775 |
| Birmingham Hip Resurfacing | * | Master Docket No. 1:17-md-2775 |
| (BHR) Hip Implant Products | * | |
| Liability Litigation | * | Judge Catherine C. Blake |
| | * | |
| | * | THIS DOCUMENT RELATES |
| | * | TO ALL ACTIONS |

**MEMORANDUM**

Now pending is the plaintiffs' motion to compel.  (ECF 2207).  The plaintiffs move to compel: 1) Dr. Peter Heeckt's employment file; 2) four additional hours of deposition of David Telling without Smith & Nephew's proposed restrictions on questions; 3) the deposition of Bill Aubrey; and 4) a detailed history, audit trail and/or timeline for the internal review and production of certain documents that were produced after depositions were already completed.

1.  <u>Dr. Peter Heeckt's employment file</u>

The plaintiffs seek Heeckt's employment file,[1] particularly Heeckt's performance evaluations and documents related to his leaving Smith & Nephew.  The plaintiffs believe that these documents may show that Heeckt was forced to leave Smith & Nephew because he was adamant about warning surgeons about the failure rates of BHR products in women.  (ECF 429-1, Mot. at 4).  The plaintiffs cite to an email produced during discovery which appears to show a Smith & Nephew senior executive threatening to fire other employees for refusing to or not doing enough to promote the BHR products in regard to reported BHR failure rates.  (ECF 2207-2, Ex. A Part 1, Sept. 3, 2010, email from J. DeVivo).  They also state that after Heeckt left Smith & Nephew for its subsidiary in 2012, his replacement did not carry out Heeckt's efforts to warn surgeons.  In response, Smith & Nephew argues that the plaintiffs have provided no

---

[1] The plaintiffs use the term "employment file" and Smith & Nephew uses the term "personnel file."  The court assumes that these are the same.

evidence to support their theory that Heeckt was moved to a subsidiary because of his efforts to warn surgeons about the BHR products, and that privacy interests weigh against producing Heeckt's personnel file.

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26.(b)(1).  But "[b]ecause personnel files contain very sensitive private information about non-parties to this litigation, this Court must weigh the significant privacy interests at stake against the need for the information contained in the personnel files."  *Halim v. Baltimore City Bd. of Sch. Comm'rs*, No. WMN-11-2265, 2012 WL 2366338, at *2 (D. Md. June 20, 2012).[2]  "The Fourth Circuit has indicated that a court should weigh the relevance of the personnel files to the pending matter against the employee's privacy interests."  *Weckesser v. Knight Enterprises S.E., LLC*, No. 2:16-CV-2053-RMG, 2019 WL 2090098, at *3 (D.S.C. May 13, 2019) (citing *Kirkpatrick v. Raleigh Cty. Bd. of Educ.*, 78 F.3d 579 (4th Cir. 1996) (unpublished)).

Whether Heeckt's departure in February 2012 was related to his attempts to warn surgeons about the BHR devices is a relevant line of inquiry for the plaintiffs.  Heeckt himself, who no longer works for Smith & Nephew and apparently has moved to Costa Rica, is not available for a deposition. Accordingly, his employment files from 2011 and 2012 may be a reasonable alternative source of information.   Plaintiffs' counsel argued that the performance evaluations from 2008–2012 are also relevant, to the extent they may show a change in evaluations coinciding with Heeckt's attempts to warn surgeons.  The court agrees.  The relevance of these documents, however, must be balanced against Heeckt's privacy interest in his employment file, which may contain personal information entitled to confidentiality.  Smith &

---

[2] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

Nephew has offered to provide the file for in-camera review, which the court believes will best balance the plaintiffs' need for potentially relevant documents with Heeckt's privacy interests. Therefore, the court will review in camera Heeckt's employment file from 2011-2012, as well as his performance evaluations from 2008–2012, in order to determine whether they are in fact relevant to the plaintiffs' theory of Heeckt's departure.  As to the other pre-2011 documents in Heeckt's employment file, the court does not find that their potential relevance outweighs Heeckt's privacy interests because they predate Heeckt's departure by over a year.  To the extent it has not done so, Smith & Nephew should also look for any responsive documents (such as emails or memos) not contained in Heeckt's employment file that discuss the circumstances of Heeckt's departure, as requested by the plaintiffs in their request for production of documents.

    2.  <u>David Telling</u>

       The plaintiffs have already deposed Telling but, after his deposition, Smith & Nephew produced an email that the plaintiffs wish to question Telling about, and which they state would have changed the way they questioned Telling about other subjects.  Smith & Nephew states that it has agreed the plaintiffs may explore subjects already covered as needed to understand the document, and that when a deposition is reopened because of new information, it should be confined to issues relating to that new information.  *See United States v. Prevezon Holdings*, Ltd., 320 F.R.D. 112, 115 (S.D.N.Y. 2017).  While the court agrees that the deposition should focus on the newly produced information, it recognizes the plaintiffs' contention that they would have asked questions differently if they had the new information.  Any limitations would involve difficult line-drawing issues during the deposition and could lead to more disputes.  The court will therefore not impose any specific restrictions on the deposition.

It does not appear that the parties dispute the amount of time the plaintiffs will have to depose Telling, as the plaintiffs' counsel acknowledged during oral argument that any disagreement is slight and not worth bringing to the court's attention. The plaintiffs will be able to use the time remaining under CMO 11 (providing a presumptive maximum of seven hours on the record), which is 3 hours and 41 minutes.

   3.   Bill Aubrey

Bill Aubrey is a U.K. employee of Smith & Nephew. He was previously scheduled for deposition but then produced a doctor's note stating he was not able to give a deposition due to his health conditions. Aubrey now provides more detailed information about his medical conditions in a sworn statement attached to Smith & Nephew's opposition to the motion to compel. Based on the sworn statement and the doctor's note, the court will not require Aubrey to give a deposition. Further, although there is an email from Aubrey to Telling about which the plaintiffs wants to question Aubrey, the plaintiffs will have additional time to re-depose Telling, who was Aubrey's supervisor, about the same email. Counsel is instructed, however, to confer as to whether an alternative – such as having Aubrey complete an affidavit about the email – may be possible.[3]

   4.   Detailed history, audit trail, and/or timeline

The plaintiffs seek a detailed history, audit trail and/or timeline for the production of certain documents after witness depositions were completed. Specifically, the plaintiffs reference two emails that they contend should have been produced sooner; one in particular

---

[3] At oral argument, the court and counsel discussed deposition by written questions, pursuant to Federal Rule of Civil Procedure 31(b), but as Smith & Nephew explained, this would still involve live, on-the-record questioning, which is not consistent with Aubrey's health concerns. *See* Fed. R. Civ. P. 31(b); *id.* 30(c)(3) ("Instead of participating in the oral examination, a party may serve written questions in a sealed envelope on the party noticing the deposition, who must deliver them to the officer. The officer must ask the deponent those questions and record the answers verbatim.").

involved Telling and was produced the night after his deposition, along with approximately 1,000 other documents.  That these two emails were produced after relevant depositions is not enough to justify discovery into Smith & Nephew's production of documents, which would invade Smith & Nephew's work product and attorney-client privilege.  *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he manner in which Ford and its attorneys conducted discovery (e.g. who was involved and 'all documents concerning same')—'discovery on discovery'—is not an appropriate topic of discovery and numerous courts have disallowed such discovery.").

**CONCLUSION**

For the reasons stated above, the court grants in part and denies in part the motion to compel.  Specifically, 1) Smith & Nephew shall produce for in camera review the documents from Dr. Heeckt's employment/personnel file from 2011–2012 and his performance evaluations from 2008–2012; 2) Smith & Nephew shall produce any other responsive documents, including correspondence or emails, about the reasons for Heeckt's departure to the plaintiffs, to the extent it has not already done so; 3) the plaintiffs may take the deposition of Telling for an additional 3 hours and 41 minutes, with respect to the newly produced information, but without specific limits to the questions; 4) the plaintiffs may not take the deposition of Bill Aubrey, but counsel should work cooperatively to find an alternative means by which Aubrey may explain the email in question, such as through affidavit; and 5) the plaintiffs are not entitled to a detailed history, audit trail, or timeline of production of documents.

Smith & Nephew shall produce the documents related to Dr. Heeckt within 10 days of the date of this memorandum and accompanying order.  The documents to be reviewed in camera

should be produced either through electronic filing under seal or by confidential email to chambers.[4]   A separate order follows.


_____7/27/20_____                                           _____/S/_____
Date                                                                     Catherine C. Blake
                                                                          United States District Judge

---

[4] Smith & Nephew should inform the court which method it prefers.